UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

GLORIA THOMAS

VERSUS

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF
SOCIAL SECURITY

CIVIL ACTION

NO. 15-705-JJB-EWD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 24, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

GLORIA THOMAS

CIVIL ACTION

VERSUS

NO. 15-705-JJB-EWD

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF
SOCIAL SECURITY

**MAGISTRATE JUDGE'S REPORT**

Plaintiff, Gloria Thomas ("Plaintiff"), brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security (the "Commissioner") denying her applications for disability insurance benefits and supplemental security income ("SSI"). Plaintiff has filed a Memorandum in Support of Appeal,[1] and the Commissioner has filed a Memorandum in Opposition.[2]

Based on the applicable standard of review under § 405(g) and the analysis which follows, the undersigned recommends that the Commissioner's decision be AFFIRMED.

**I.      Procedural History**

Plaintiff filed applications for disability insurance benefits and SSI Supplemental Security Income benefits on November 21, 2012[3] alleging disability beginning November 1, 2012.[4] Plaintiff's claim was initially denied on March 22, 2013,[5] and thereafter Plaintiff requested a

---

[1] R. Doc. 27. References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "(AR [page number(s)]."

[2] R. Doc. 31.

[3] AR pp. 178-185.

[4] AR p. 107. In briefing and during the hearing before the ALJ, Plaintiff amended her alleged disability onset date to August 7, 2012. AR p. 69; AR p. 270.

[5] AR pp. 122-125.

hearing before an Administrative Law Judge ("ALJ").[6]  A hearing was held on December 4, 2013 at which Plaintiff, represented by counsel, testified.[7]  A vocational expert, Thomas Mongol, also appeared and testified.[8]

On April 24, 2014, the ALJ issued a notice of unfavorable decision.[9]  Thereafter, Plaintiff requested review by the Appeals Council.[10]  On August 25, 2015, the Appeals Council denied Plaintiff's request for review.[11]  On October 23, 2015, Plaintiff filed her Complaint.[12] Accordingly, Plaintiff exhausted her administrative remedies before timely filing this action for judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial review.[13]

## II.      Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.  *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the

---

[6] AR pp. 126-130.

[7] AR pp. 38-89.

[8] AR pp. 76-86.

[9] AR pp. 14-31.

[10] AR p. 12.

[11] AR pp. 1-4.

[12] R. Doc. 1.

[13] *See*, 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision.  The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised.  You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.    The ALJ's Decision

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1505; 416.905.  The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits.  20 C.F.R. §§ 404.1520; 416.920.  In the five-step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work.  *Masterson*, 309 F.3d at 271.

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity ("RFC"), age, education and past work experience, that he or she is capable of performing other work.  20 C.F.R § 404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work.  *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:[14]

---

[14] AR pp. 19-30.

1. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016;

2. Plaintiff had not engaged in substantial gainful activity since November 1, 2012;[15]

3. Plaintiff had the following severe impairments: degenerative disc disease, carpel tunnel syndrome, obesity, affective disorder, anxiety disorder, and dependent personality disorder;

4. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

5. Plaintiff had the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds.  She can only engage in simple tasks working more with things than people. She cannot work production-assembly line work.  She can frequently but not constantly use both hands for grasping, fingering and feeling;"[16]

6. Plaintiff could not perform any past relevant work;

7. Plaintiff was a younger individual as defined by the regulations on the alleged disability onset date;

8. Plaintiff had at least a high school education and was able to communicate in English;

9. Transferability of job skills was not material to the disability determination because using the Medical-Vocational Rules as a framework supported a finding that the Plaintiff was "not disabled," whether or not the Plaintiff had transferable job skills;

10. Considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform; and

11. Plaintiff had not been "under a disability, as defined in the Social Security Act" from November 1, 2012 through April 24, 2014.[17]

## IV.    Plaintiff's Allegations of Error

Plaintiff asserts three allegations of error.  First, Plaintiff argues that the ALJ abused her discretion because her "analysis, conclusions and findings with respect to the listings, credibility

---

[15] As noted above, in briefing and during the hearing, Plaintiff amended her alleged disability onset date to August 7, 2012.  AR pp. 69 & 270.  The undersigned recognizes that the ALJ's ruling utilizes Plaintiff's original alleged onset date of November 1, 2012.  This discrepancy does not change the undersigned's analysis.

[16] AR p. 22.

[17] AR p. 30.

and RFC are unsupported by substantial evidence. The ALJ's rationale includes material distortions and mischaracterizations as well as fabrications of facts."[18] With respect to this allegation of error, Plaintiff argues that the ALJ's determination that Plaintiff was "consistently noncompliant with her treatment regime" and that Plaintiff "had significant improvement in functioning" from March 2013 to December 2013 is unsupported by the record and that the record actually "reveal[s] the opposite."[19] Second, Plaintiff argues that she meets the criteria for a finding of presumptive disability pursuant to §§ 12.03(C)(2) (schizophrenic, paranoid, other psychotic disorders) 12.04(C)(2) (affective disorders) of 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") because the evidence establishes that she would decompensate if exposed to an increase in mental demands. Finally, Plaintiff asserts that the ALJ improperly weighed the opinion of Dr. Ryder, whom Plaintiff describes as her treating psychiatrist.

V.    **Law and Analysis**

A.    **Substantial Evidence Supports the ALJ's Determination that Plaintiff Had Improvement in Functioning when Compliant with Her Treatment Regime, and the ALJ's RFC Determination Takes into Account Plaintiff's Remaining Limitations**

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only

---

[18] R. Doc. 27, p. 9. The court cautions counsel of his ethical obligations. Reasonable people can differ in their analysis of the facts and the law but this court does not condone allegations that an administrative law judge fabricated facts, particularly where, as here, the court finds substantial evidence supports the ALJ's ruling.

[19] R. Doc. 27, p. 12.

if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

In her April 24, 2014 opinion, the ALJ found that Plaintiff "does have a significant history of mental problems, but the frequency of the symptoms is dependent upon the claimant's non-compliance with treatment and medication. The treatment record clearly shows that the claimant does well while on medication…."[20]  The ALJ went on to note that medical notes "revealed that the claimant was determined to be consistently noncompliant with her treatment regimen"[21] and that "[s]ubsequent notes from March 2013 to December 2013, reveal the claimant has significant improvement in functioning."[22]  Based on her review of Plaintiff's record, the ALJ determined that:

> As for the claimant's mental problems, the evidence supports that this condition is severe, as the claimant has experienced hallucinations and paranoia along with symptoms of depression and anxiety. However, the evidence also shows that with medication, the claimant's condition improves and she is able to function adequately. The claimant is capable of appropriate thought processing and has no deficits in memory. She is able to understand and remember simple and complex instructions. However, given

---

[20] AR pp. 21-22.

[21] AR p. 23.

[22] AR p. 25.

7

that the claimant has difficulty dealing with stress, activities that are complex could increase her anxiety.  Consequently, the claimant would do better with simple tasks that do not impose any amount of significant stress, such as might occur with production and assembly line work.[23]

Based on her determination that Plaintiff's condition improved with medication, but that Plaintiff still had difficulty dealing with stress, the ALJ determined that Plaintiff had the RFC to perform "light work," except that Plaintiff could "never climb ladders ropes or scaffolds" and could "only engage in simple tasks working more with things than people.  She cannot work production-assembly line work."[24]

Plaintiff argues that the ALJ abused her discretion by "misrepresenting evidentiary facts" related to Plaintiff's treatment compliance and improvement in functioning.[25]  Plaintiff contends that "the record reveals that [she] is 'taking meds regularly,' 'takes meds daily,' and 'is compliant,'" and that the citations relied upon by the ALJ for the finding that Plaintiff had significant improvement in functioning during 2013 actually "document the opposite of what the ALJ claims."[26]  As discussed herein, the undersigned finds that substantial evidence supports a finding that Plaintiff improves with treatment.  Moreover, assuming Plaintiff continues to have some limitations even with treatment, the ALJ's RFC determination properly takes these limitations into account.

### i. Substantial Evidence Supports the ALJ's Determination that Plaintiff Improves when on Medication.

In her April 24, 2014 decision, the ALJ noted that "[t]he treatment record clearly shows

---

[23] AR p. 28.

[24] AR p. 22.

[25] *See*, R. Doc. 27, p. 10.

[26] R. Doc. 27, p. 11.

that the claimant does well while on medication…."[27]  While the ALJ recognized that Plaintiff has a history of mental problems, she noted that "the frequency of the symptoms is dependent upon the claimant's non-compliance with treatment and medication."[28]  The undersigned finds that a review of the administrative record supports the ALJ's determination that Plaintiff's symptoms improve when compliant with her treatment regime.[29]

A Margaret Dumas Mental Health Center ("MDMHC") progress note dated October 1, 2012 indicates that Plaintiff was not consistently compliant with medications.[30]   At that time, Plaintiff's appearance was noted as disheveled and obese, and her mood anxious and dysphoric.[31]  Similarly, during a November 13, 2012 visit, Plaintiff's appearance was noted as disheveled and obese, her affect blunted, mood depressed, and her speech was soft, slurred, and monotone.[32]  Plaintiff reported a "'real deep depression,'" as well as auditory hallucinations instructing Plaintiff to kill herself.[33]  A Physician Emergency Certificate was completed,[34] and Plaintiff was transferred

---

[27] AR p. 22.

[28] AR pp. 21-22.

[29] Notes prior to Plaintiff's alleged amended onset date of August 7, 2012 also reflect that Plaintiff's condition improves with treatment.  In December, 2011, Plaintiff was brought to Earl K. Long Medical Center by her father because of suicidal thoughts.  AR pp. 308-309.  Plaintiff received mental health treatment at Margaret Dumas Mental Health Center and on December 19, 2011, Plaintiff reported that her medication made her calmer, and she denied suicidal thoughts.  AR p. 403.  A July 9, 2012 progress note indicates that "[p]atient reports that she has no problems with current medications…" and that on mental status exam, Plaintiff presented with good hygiene, normal appearance, fair eye contact, appropriate affect, euthymic mood, speech within normal limits, cooperative attitude, logical thought process, and non-psychotic thought content.  AR p. 401.

[30] AR p. 438 ("Patient forgets to take her medication because she falls asleep.  She does not like the number of pills she has to take"); AR p. 439 ("Patient is not consistently compliant with medications.  She does not want to take as many pills as she does now.").

[31] AR p. 438-439.

[32] AR pp. 432-433.

[33] AR p. 433.  "When angry command hallucinations to kill herself.  Patient reports that she tries to ignore the voices.  Thinks of her little girl.  Last heard voices 3 days ago and it told her to go get a knife.  Patient reports that she also prays to distract herself from the voices."  AR p. 433.

[34] AR p. 361.

to Earl K. Long Medical Center.[35]  Thereafter, on November 19, 2012, Plaintiff presented back to MDMHC with her discharge paperwork, reporting that she was feeling better.[36]  Plaintiff reported that Wellbutrin helped her mood, she was no longer hearing voices, and she denied crying spells, suicidal ideation, and homicidal ideation.[37]  Plaintiff was noted as having non-psychotic thought content; intact memory; fair intellect, insight, and judgment; and was oriented to person, place, time, and situation.[38]

Similarly, a progress note dated January 23, 2013 indicates that Plaintiff "has been off of her medication for two weeks, because her daughter was sick" and that Plaintiff's "depressed mood, agitation, difficulty sleeping, anxiety, and agitation [sic] have been uncontrolled."[39]  In contrast, a February 20, 2013 MDMHC progress note indicates that "Patient has had fewer anger episodes (approx. 4 in the past month), since Risperdal was increased.  She has felt some improvement in her depressed mood since starting Mirtazapine, but still cries frequently."[40]  On March 27, 2013, Plaintiff reported that her anger had improved on her current medications, but that she continued to feel depressed and anxious at times.[41]  On April 9, 2013, Plaintiff began treatment at Capitol City Family Health Center, and transferred her mental health care there.[42] Plaintiff met with Yolanda Johnson for behavioral health treatment on May 30, 2013 and presented with subjective reports of depressed mood, problems sleeping, history of auditory and visual

---

[35] AR p. 361.

[36] AR p. 449.

[37] AR p. 450.

[38] AR p. 450.

[39] AR p. 429.  Plaintiff also reported that when taking her medications, Wellbutrin made her feel agitated.  AR p. 429.

[40] AR p. 482.

[41] AR p. 548.

[42] *See*, AR p. 632 (April 9, 2013 visit to Capitol City Family Health for complaints of back and leg pain; "[a]lso states that she has hx of severe depression & currently being seen at Margaret Dumas, but would like to transfer service to CCFHC.  Pt. reported trying to establish care here today.").

hallucinations, command voices, and symptoms of anxiety, panic attacks, and PTSD.[43]   Ms.

Johnson's notes from that visit indicate that "Ms. Gloria has been treated at Margaret Dumas

Mental Health Center for depression with psychotic features.  Her last visit was March 2013, she

has been off of medication for at least one month and is seeking mental health services here to

have her services closer to home."[44]

On August 12, 2013, Plaintiff met with Dr. Ryder, a psychiatrist with Capitol City Family

Health.[45]  The progress note from that visit reflects:

> Pt looks and sounds good.  Smiling, pleasant and cooperative.  She
> stated that she's doing better in general.  Sleeping better but still
> awakens and can't go back to sleep.  No more A/V hall.[46]  Not
> depressed like she was.  Still some but much better.  Not as nervous
> but still has some bouts of anxiety to point of having broken out in
> itching, raised rash.  Her sister has some 'depression' med and pt.
> used some and it helped.  My inquiry concluded was probably
> Xanbar (?).  We talked about it and/or other and lets work with what
> we started – and why – "OK."[47]

Similarly, on October 14, 2013, Dr. Ryder noted that Plaintiff came "in smiling, stated had no

particular problems or complaints" and that Plaintiff stated "auditory hallucinations not enough to

bother and no SI/HI.[48]  Sleeping very good and taking meds regularly."[49]

A finding of no substantial evidence is appropriate only if no credible evidentiary choices

or medical findings support the decision.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting

*Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).  The undersigned agrees that Plaintiff's records

---

[43] AR p. 627-628.

[44] AR p. 628.

[45] AR p. 625.

[46] The undersigned understands this shorthand to mean "no more auditory/visual hallucinations."

[47] AR p. 625.

[48] The undersigned understands this shorthand to mean "no suicidal ideation/homicidal ideation."

[49] AR p. 621.

indicate "a significant history of mental problems."   However, as outlined above, the administrative record supports a finding that in the latter part of 2013, especially following the transfer of Plaintiff's treatment to Capitol City Family Health, Plaintiff was treatment compliant and exhibited a significant improvement in functioning.[50]   Accordingly, the undersigned finds that substantial evidence supports the ALJ's determination that, with compliance to her treatment regime, Plaintiff's condition improves.

### ii. Plaintiff's Remaining Limitations are taken into Account in the RFC.

As discussed above, the administrative record contains substantial evidence to support the ALJ's determination that Plaintiff improves when compliant with her treatment regime.  However, the record also indicates that even when treatment compliant, Plaintiff's symptoms do not completely abate.  For example, in a March 27, 2013 progress note, Plaintiff reported that while her anger had improved on her medications, she continued to feel depressed and anxious at times.[51] On August 12, 2013, Dr. Ryder reported that Plaintiff still had some depression but was much better, and was "[n]ot as nervous but still has some bouts of anxiety to the point of having broken out in itching, raised rash."[52]   Similarly, on October 2, 2013, although Plaintiff reported that she was doing okay overall and was not feeling bad emotionally, she also discussed techniques for reducing stress with Ms. Johnson.[53]  During the December 4, 2013 hearing, Plaintiff explained that her medication made her auditory hallucinations better, but stated that she still had episodes of

---

[50] AR pp. 625 & 621.

[51] AR p. 548.

[52] AR p. 625.

[53] AR p. 621 ("Ms. Gloria reports that overall she is doing okay.  She reports that she is not feeling bad emotionally but that she is experiencing pain in her neck.  Patient reports that on October 23rd she is having surgery.  Relationship with father not good, she does not like his girlfriend, feels he does more for his girlfriend than her.  Sleep is okay, restless at times.  Reports blood pressure remained elevated.  Discussed techniques for reducing stress and the benefits of her engaging and creating a self with interest and hobbies.  Patient identified her interest in shopping, and is considering joining the YMCA and cooking.").

depression once a week and had trouble responding to pressure or stress.[54]

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Assuming Plaintiff remains symptomatic despite treatment,[55] the undersigned finds that the ALJ's RFC determination properly takes into account Plaintiff's remaining limitations. Here, the ALJ recognized that Plaintiff had difficulty with stress, and that complex activities could increase her anxiety.[56] Consequently, the ALJ found that Plaintiff "would do better with simple tasks that do not impose any amount of significant stress, such as might occur with production and assembly line work."[57] The ALJ's RFC determination takes Plaintiff's residual limitations into account, because it limits Plaintiff to simple tasks working more with things than people and precludes production-assembly line work.[58] Accordingly, the undersigned finds that substantial evidence

---

[54] *See*, AR pp. 60-63.

[55] Plaintiff argues that the ALJ's "material distortions and mischaracterizations as well as fabrications of facts" (related to Plaintiff's medication compliance and improvement in functioning) cast doubt on the ALJ's Listing determination (discussed below) as well as the ALJ's conclusions and findings with respect to Plaintiff's credibility and RFC. R. Doc. 27, p. 9. This court will afford "great deference" to the ALJ's credibility determination. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). While an ALJ must articulate reasons for a finding that a claimant lacks credibility, such explanation "need not follow formalistic rules." *Spruill v. Astrue*, 229 Fed. Appx. 356, 358 (5th Cir. 2008) (citing *Falco v. Shalala*, 27 F.3d 160, 163-164 (5th Cir. 1994) (stating that credibility determinations are "precisely the kinds of determinations that the ALJ is best positioned to make.")). In her decision, the ALJ found that Plaintiff's "medically determinable impairments could be reasonably expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible…." AR pp. 22-23. As discussed herein, the undersigned finds substantial evidence supports the ALJ's determination that Plaintiff's condition improves with treatment and medication, and that substantial evidence supports the ALJ's RFC determination. For these same reasons, the undersigned finds substantial evidence supports the ALJ's credibility determination.

[56] AR p. 28.

[57] AR p. 28.

[58] AR p. 22.

supports the ALJ's RFC determination.

### B.  Plaintiff Has Not Established Presumptive Disability Pursuant to the Listings

Plaintiff has the burden of establishing that she meets a Listing.  *See*, *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); 20 C.F.R. § 404.1520(d).  The criteria for the Listings are "demanding and stringent." *Siewert v. Colvin*, 2016 WL 7478968, at * 6 (M.D. La. Dec. 29, 2016) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)).  "Plaintiff's subjective complaints, without objective medical evidence, are insufficient to establish disability." *Id*. (citing 20 C.F.R. §§ 404.1508, 404.1528, 404.1529).  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Plaintiff argues that she meets the Listing criteria set forth in §§ 12.03(C)(2) and/or 12.04(C)(2).  Listing § 12.03 details the criteria for disabling "Schizophrenic, Paranoid and other Psychotic Disorders: Characterized by the onset of psychotic features with deterioration from a previous level of functioning." 20 C.F.R., pt. 404, subpt. P, appx. 1, § 12.03.  Listing § 12.04 details the criteria for disabling "Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome."  20 C.F.R., pt. 404, subpt. P, appx. 1, § 12.03.  To meet the (C)(2) requirement of either Listing, a claimant must show a medically documented history of the particular mental disorder "of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," and "[a] residual disease progress that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to

decompensate."[59]  Pursuant to the regulations, the term "episodes of decompensation" is defined as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R., pt. 404, subpt. P, appx. 1, § 12.00(C)(4).  The regulations provide that such episodes

> may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two).   Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (*e.g.*, hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

Pursuant to these definitions, in order to meet the criteria set out in (C)(2), Plaintiff must establish that while her mental disorder(s) is currently mitigated by medication or psychosocial support, her mental status is tenuous, such that even a slight increase in mental demands or change in environment would be predicted to greatly exacerbate her symptoms (*i.e.*, require a significant alteration in her medication, hospitalization, or placement in a highly structured household).  *See,*

---

[59] A claimant can also meet the severity requirement of Listing § 12.03 and/or § 12.04(C) by establishing "repeated episodes of decompensation, each of an extended duration," or a "current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement."  *See*, Listings §§ 12.03(C)(1); 12.04(C)(1); 12.03(C)(3); 12.04(C)(3).  The term "repeated episodes of decompensation, each of extended duration" is defined as "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R., pt. 404, subpt. P, appx. 1, § 12.00(C)(4).  Plaintiff does not argue, and the administrative record does not support, a finding that she has experienced repeated episodes of decompensation.  Additionally, Plaintiff does not argue that she has a current history of one or more years' inability to function outside a highly supportive living arrangement.  During the hearing, Plaintiff explained that her primary care doctor, Dr. Langley, recommended that Plaintiff receive long-term personal care services.  *See*, AR pp. 64 & 59; AR pp. 642-643.  The "referral for medical information on incapacity" completed by Dr. Langley indicates that Plaintiff stated she was incapacitated due to "blood problem, heart and leg problems."  AR p. 556.  Dr. Langley's evaluation was focused on Plaintiff's physical capabilities.  AR p. 557.  During the hearing, Plaintiff explained that she was approved for a caregiver "because I was having trouble with my hands."  AR p. 45.  Accordingly, while it appears Plaintiff received long-term personal care services, it does not appear that the primary purpose for such services was related to Plaintiff's mental conditions.  Plaintiff does not argue that the ALJ erred in analyzing Plaintiff's hand trouble.

15

*Jackson v. Astrue*, 2011 WL 11048251, at * 9 (S.D. Tex. Aug. 22, 2011) (affirming ALJ's determination that plaintiff did not meet the requirements of the Listings and explaining that in order for plaintiff to meet Listing § 12.02(C)(2), plaintiff "must provide medical evidence proving that the demands of even a low stress job would cause her to mentally decompensate at work.").

Plaintiff argues that the evidence establishes that she would decompensate if exposed to an increase in mental demands, and specifically relies on treatment records prior to the late part of 2013 (*i.e.*, prior to the time period discussed above during which Plaintiff showed improvement in functioning). Plaintiff points out that in December, 2011 she was admitted to the hospital for suicidal ideation as well as audio and visual hallucinations.[60] She cites a December 5, 2012 MDMHC progress note reflecting that Plaintiff's "suicidal thoughts depends [sic] on how stressed she is. She understands the need to reduce the amount of stress or decrease it totally."[61] Plaintiff also cites her August 7, 2012 self-report that she "stresses out easily and don't [sic] finish what she starts,"[62] and notes from November, 2012 wherein she reported "'real deep depression'" and "difficulty tolerating care for her daughter and having to clean the entire house up after her family."[63] Additionally, Plaintiff cites the opinion of Dr. Joy Terrell, who performed a confidential consultative examination on February 20, 2013[64] and responses to a post-hearing questionnaire

---

[60] R. Doc. 27, p. 12. The undersigned notes that this hospitalization occurred prior to Plaintiff's initial or amended disability onset date.

[61] AR p. 399.

[62] AR p. 442. The undersigned notes that in this same progress note, Plaintiff's therapist noted "go to library and look in the career book or jobs from Home for an idea interest." AR p. 442.

[63] AR p. 432.

[64] AR pp. 476-479. Plaintiff reported to Dr. Terrell that she heard unfamiliar voices and images of dead people when stressed, and that such hallucinations occurred on average twice a week. AR p. 476. Dr. Terrell concluded that Plaintiff "may not be able to tolerate the stress/pressure associate with daily work activity and demands." AR p. 479.

completed by a psychiatrist, Dr. Ryder.[65]

Plaintiff is correct that the record includes notes indicating Plaintiff's condition may deteriorate with stress; however, as explained above, the record also supports the ALJ's determination that with treatment, Plaintiff's ability to function improves significantly.[66] As noted by the ALJ, "[t]he claimant does have a significant history of mental problems, but the frequency of the symptoms is dependent upon the claimant's non-compliance with treatment and medication. The treatment record clearly shows that the claimant does well while on medication; and although the claimant states she is overly dependent on her father, she is quite capable of taking care of herself and her child."[67]   Although Plaintiff argues that the ALJ's findings related to Plaintiff's condition while on medication are "irrelevant to the listing…,"[68] the undersigned finds that the scale of Plaintiff's improvement is relevant to an analysis under (C)(2), which requires the ALJ to determine whether Plaintiff's "residual disease process" has resulted in "such marginal adjustment" that, despite medication and therapy, Plaintiff would be predicted to decompensate. Significantly, the undersigned notes that while Plaintiff relies on treatment records from 2011 and 2012, records from late 2013 indicate that although Plaintiff was experiencing stressors in her life, including dealing with her father's girlfriend (who she reportedly did not like) and her reported

---

[65] Dr. Ryder examined Plaintiff twice – in August and October, 2013.  As noted in § V(A)(i), Dr. Ryder's notes from both visits indicate that Plaintiff was doing well.  As discussed below, Dr. Ryder's subsequent responses to Plaintiff's counsel's post-hearing questionnaire are inconsistent with his treatment notes.

[66] There are indications in the administrative record that instances of non-compliance were based on Plaintiff's intentional choice and that Plaintiff has self-medicated outside of her prescribed regime.  *See*, AR p. 438 ("Patient is not consistently compliant with medications.  She does not want to take as many pills as she does now."); AR p. 625 ("Her sister has some 'depression' med and pt. used some and it helped.").  *See also*, R. Doc. 27, p. 10 ("She has always given a reason for any failures to take medication.").  Plaintiff does not argue that her condition makes her unable to comply with her treatment regime.

[67] AR p. 22.

[68] R. Doc. 27, p. 14.

chronic pain,[69] Plaintiff apparently did not decompensate.  Accordingly, the undersigned finds that Plaintiff has not carried her burden of proving she can satisfy the requirements of Listing §§ 12.03(C)(2) and/or 12.04(C)(2) and that substantial evidence supports the ALJ's determination that "the symptoms and medical history of the claimant does not reach the severity as indicated in the C portion of either of these listings."[70]  *See also*, *Patterson v. Astrue*, 2008 WL 4510036, at * 5 (M.D. La. Sept. 30, 2008) (affirming ALJ's determination that plaintiff did not meet Listing 12.04(C) where record indicated plaintiff was dealing with significant life stressors, including caring for her husband with paranoid schizophrenia and her mother who was suffering from Alzheimer's, and there was no evidence of decompensation).

### C.  The ALJ Gave Appropriate Weight to Dr. Ryder's Opinion

Plaintiff contends that the ALJ "improperly rejected the opinion of Plaintiff's treating psychiatrist" and "failed to consider and weigh, the other opinion of Plaintiff's psychiatrist."[71] Specifically, Plaintiff argues that the ALJ's decision to afford "little weight" to a psychiatric evaluation form completed by Dr. Ryder on November 25, 2013[72] and failure to discuss or analyze a post-hearing follow-up questionnaire completed by Dr. Ryder on December 18, 2013[73] constitute reversible error.

---

[69] AR p. 625 ("The patient discussed that she is upset with her father because he has gotten a girlfriend and thinks that he is putting the girlfriend ahead of her.  We discussed some of the examples she presented and I attempted to compare that to reality, prompting the patient to say, 'I know I am spoiled.'"); AR p. 621 ("Relationship with father is not good, she does not like his girlfriend, feels he does more for his girlfriend than her.  Sleep is okay, restless at times."); AR p. 621 (Plaintiff complained of chronic pain).

[70] AR p. 21.

[71] R. Doc. 27, p. 15.

[72] AR pp. 646-649.

[73] AR pp. 658-661.

In his November 25, 2013 psychiatric evaluation form,[74] Dr. Ryder opined that Plaintiff had "marked" limitations in her ability to complete a normal workday or week and her ability to deal with changes in a routine work setting; "moderate" limitations in her ability to make simple work related decisions and respond appropriately to supervision, co-workers, and usual work situations; and "mild" limitations in her ability to carry out simple job instructions.[75]  Dr. Ryder also indicated that "[w]ithout stress patient does pretty well.  With stress tends to become more stressed and becomes dysfunctional."[76]  In the December 18, 2013 follow-up questionnaire, Dr. Ryder opined that Plaintiff was "more susceptible to day to day stressors of being a mother, self-care and work,"[77] that Plaintiff would "probably become quickly overwhelmed and symptomatic,"[78] and that "Ms. Thomas' history of trauma and mental illness would limit her ability to perform under stress."[79]  Dr. Ryder concluded with the following statement: "I do clinically state that the patient would not complete tasks in a timely manner and she could not sustain a 40 hour work week."[80]

---

[74] There is no indication in the administrative record that Dr. Ryder saw Plaintiff for treatment other than on August 12, 2013 and October 14, 2013.  Moreover, there is no indication in the administrative record that Dr. Ryder examined Plaintiff immediately prior to completing either the November 25, 2013 evaluation or the December 18, 2013 questionnaire.

[75] AR pp. 647-648.  The evaluation form defines a "mild" limitation as "rarely precluded;" a "moderate" limitation as "occasionally precluded (up to 1/3 of a workday);" and a "marked" limitation as "frequently precluded (up to 2/3 of the workday)."  AR p. 646.

[76] AR p. 648.

[77] AR p. 658.

[78] AR p. 659.

[79] AR p. 660.  Additionally, Dr. Ryder answered "Yes" to the following questions tracking the criteria of Listing §§ 12.03(C)(2) and 12.04(C)(2): (1) "Does Gloria have a medically documented history of a chronic affective and/or psychotic disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms or signs currently attenuated by medication or psychological support?"; and (2) "Is there a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause her to decompensate?"  AR p. 659.

[80] AR p. 661.  The administrative record also includes a follow-up questionnaire completed by Dr. Ryder on August 28, 2014 (i.e., after the ALJ's decision).  Other than quoting some of Dr. Ryder's conclusions set forth therein in support of her argument that she meets the Listings, Plaintiff does not focus on the August 28, 2014 questionnaire in brief.  For the same reasons stated herein, the undersigned finds that substantial evidence supports giving little weight

In her opinion, the ALJ explained:

> In the reports from Dr. Ryder…he opines that the claimant has moderate to marked deficits in functioning secondary to her mental condition.  The undersigned gives little weight to this opinion. There are two records of Dr. Ryder treating the claimant and they fully contradict his opinion.  Furthermore, his opinion is also contradicted by notes from his facility as well as Margaret Dumas that show improvement with adherence to medications.[81]

Plaintiff argues that "[a]s to the ALJ's claim that Dr. Ryder's opinion is 'fully' contradicted by his records, this is as absurd as it is untrue."[82]  Plaintiff additionally asserts that the ALJ's claim that Dr. Ryder's opinion is contradicted by the treatment notes from MDMHC "is likewise without support."[83]

Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability."  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician). However, an ALJ may reject the treating source's opinion when "'there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.'"  *Walker v. Barnhart*, 158 Fed. Appx. 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458).  Further, "the ALJ may give 'less weight, little weight, or even no weight' to the opinion of a treating physician upon a showing of good cause."  *Ray v. Barnhart*, 163 Fed. Appx. 308, 313 (5th Cir. 2006) (quoting *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001)).  In summary, an ALJ is free to discredit the opinion of a treating physician when it is

---

to the opinions set forth in the August 2014 questionnaire, and that the responses do not cast doubt on the existence of substantial evidence to support the ALJ's decision.  *See*, *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

[81] AR p. 27.

[82] R. Doc. 27, p. 16.

[83] R. Doc. 27, p. 16.

contradicted by the evidence in the record. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (ALJ may reject a treating physician's opinion in favor of an examining physician where the evidence supports a contrary conclusion). Where an ALJ has found a treating physician's opinion to be inconsistent with that physician's own treatment records and other evidence in the record, this court has affirmed the ALJ's rejection of that opinion. *See*, *Villar v. Colvin*, 2015 WL 7731400 (M.D. La. Oct. 8, 2015) (affirming ALJ's rejection of treating physician's opinion where physician's own notes and other notes in the record failed to support the physician's opinion); *Miller v. Colvin*, 2016 WL 1178391, at * 4 (M.D. La. Feb. 25, 2016) (affirming ALJ's decision to afford little weight to treating psychiatrist's Mental Medical Source Statement where Statement was unsupported by psychiatrist's own treatment notes). Here, the undersigned finds that the ALJ's treatment of Dr. Ryder's psychiatric evaluations is not grounds for reversal or remand.

First, it is not clear that Dr. Ryder should be considered a "treating source" whose opinion would, under usual circumstances, be entitled to more weight. Under the regulations, a "treating source" is defined as a medical source that has or has had "an ongoing treatment relationship" such that the medical evidence shows that Plaintiff sees or has seen "the source with a frequency consistent with accepted medical practice for the type of treatment." 20 CFR § 404.1502. Opinions from treating sources are generally given more weight "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture" of a claimant's impairments. 20 CFR § 404.1527(c)(2). Where no such longitudinal pattern of care is shown, the Fifth Circuit has held that an ALJ is not required to give that professional's opinion greater weight. *See*, *Clayborne v. Astrue*, 260 Fed. Appx. 735, 737 (5th Cir. 2008) (doctor properly rejected as treating source where "isolated visits" did not amount to an "ongoing treatment relationship" with doctor); *Hernandez v. Heckler,* 704 F.2d 857, 860–61 (5th Cir. 1983) (doctor who only saw

21

claimant twice in a 17–month period was not a treating physician); *Taylor v. Astrue,* 245 Fed.

Appx. 387, 391 (5th Cir. 2007) ("[N]othing about Taylor's relationship with Dr. Weisberg

establishes the 'longitudinal' pattern of care described in [the regulations]; Taylor's two visits to

Dr. Weisberg, four years apart, are the sort of 'individual examinations' that are distinguished ...

from the continuous care provided by a treating physician.").  *See also*, *Siewert v. Colvin*, 2016

WL 7478968, at * 6 (M.D. La. Dec. 29, 2016) ("The sporadic nature of Dr. Sigrist's treatment,

alone, was an appropriate basis on which the ALJ could discount his opinion.") (citing, *Sullivan v.*

*Commissioner of Social Security*, 595 Fed. Appx. 502, 507 (6th Cir. 2014) (ALJ properly

discounted physician's opinion as claimant's "treating relationship with [the doctor] was

sporadic."); *Cookson v. Colvin*, 111 F.Supp.3d 142, 152 (D.R.I. 2015) (ALJ properly rejected

physician's opinion based on doctor's infrequent treatment)).  Here, the record includes only two

treatment records from Dr. Ryder dated in August and October, 2013.[84]  Such limited treatment

does not establish the longitudinal pattern of care described in the regulations which would require

the ALJ to afford Dr. Ryder's opinion any significant weight.

Second, even if considered a treating source, substantial evidence supports the ALJ's

determination that Dr. Ryder's psychiatric evaluation[85] should be given little weight.[86]  As

---

[84] AR p. 625 (August 12, 2013 progress note); AR p. 621 (October 14, 2013 progress note).

[85] AR pp. 646-649.

[86] Plaintiff argues that a March 6, 2013 consultative examination report by Dr. Joy Terrell also supports Dr. Ryder's opinions. R. Doc. 27, p. 18. Dr. Terrell examined Plaintiff on February 20, 2013. AR p. 476. Dr. Terrell noted that "[t]reatment has been somewhat effective, but Ms. Thomas continues to experience a depressed mood five days a week." AR p. 476. Further, Dr. Terrell noted that Plaintiff "reported hearing unfamiliar voices whenever she is stressed. The voices give her commands. When stressed, Ms. Thomas also sees images of deceased familiar people. The hallucinations occur twice a week on average." AR p. 476. Dr. Terrell found Plaintiff's appearance and self-care appropriate, motor activity unremarkable, eye contact and speech flow normal, affect appropriate, mood euthymic, thought content appropriate, attention and concentration adequate, and noted that Plaintiff performed adequately on tasks pertaining to reasoning, abstract thinking and concept formation. AR pp. 477-478. Dr. Terrell concluded that Plaintiff appeared to meet the criteria for Major Depressive Disorder with symptoms in the severe range; however, "based on presentation and reported symptoms, the severity has improved." AR p. 479. Dr. Terrell went on to note that:

discussed above, the administrative record includes two progress notes reflecting psychiatric appointments with Dr. Ryder. On August 12, 2013, Dr. Ryder noted that Plaintiff looked and sounded good, that she was smiling, pleasant and cooperative, and that she reported she was "doing better in general."[87]  Plaintiff reported no audio or visual hallucinations, and that she was not depressed like she had been and she was not as nervous.[88]  On October 14, 2013, Dr. Ryder noted that Plaintiff was smiling, and that she stated she had no particular problems or complaints."[89] Plaintiff reported that the auditory hallucinations were "not enough to bother" and that she was sleeping "very good" and taking her medication regularly.[90]  The undersigned finds that these treatment notes (which are the only treatment notes from Dr. Ryder in the record) do not support the restrictions set forth by Dr. Ryder in his November 25, 2013 psychiatric form or his December 18, 2013 post-hearing questionnaire.  Moreover, there is evidence in the administrative record (including contemporaneous progress notes from Ms. Johnson) that also supports the ALJ's determination that, when compliant with treatment, Plaintiff's functioning improved.  *See also*, *Parker v. Astrue*, 2012 WL 5384821, at * 7 (M.D. La. Nov. 1, 2012) ("While the plaintiff pointed out several excerpts from the treatment records which he contends support [treating physician's]

---

Ms. Thomas is able to understand, remember, and carry out instructions for simple and complex tasks.  She is able to maintain attention to perform simple and complex tasks for two hour blocks of time.  Ms. Thomas is able to respond appropriately to supervision and interact appropriately with co-workers.  She may not be able to sustain effort and persist at a normal pace over the course of a routine 40 hour work week.  Ms. Thomas may not be able to tolerate the stress/pressure associated with daily work activity and demands.

AR p. 479.  As discussed herein, the undersigned finds that substantial evidence supports the ALJ's determination that in the late part of 2013, Plaintiff had significant improvement in functioning.  Accordingly, the undersigned finds that substantial evidence also supports the ALJ's determination that Dr. Terrell's opinion should be given "some but not great weight" because "additional evidence…shows that the claimant's condition improved and the claimant's ability to function increased."  AR p. 25.

[87] AR p. 625.

[88] AR p. 625.

[89] AR p. 621.

[90] AR p. 621.

restrictions [set forth in a mental residual functional capacity assessment], the same records contain other information which supports the ALJ's finding that the limitations imposed by Dr. Parsons were unsupported."); *Swan v. Colvin*, 2016 WL 5429669, at * 13 (M.D. La. Aug. 30, 2016) ("The Court finds it unnecessary to determine whether Dr. Morrison is a 'treating physician' because Dr. Morrison's November 26, 2013 Medical Source Statement is inconsistent with her treatment records and would not be entitled to substantial weight even if Dr. Morrison is a 'treating physician.' The Fifth Circuit has held that an ALJ may give less weight to a treating physician's opinion when good cause is shown, as is the case when his statement as to disability is so brief and conclusory that it lacks strong persuasive weight, is not supported by medically acceptable clinical laboratory diagnostic techniques, *or is otherwise unsupported by the evidence*.") (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)) (emphasis added by *Swan* court).

Third, despite Plaintiff's assertion that the ALJ "wholly ignored" and "fail[ed] to even mention"[91] Dr. Ryder's December 18, 2013 responses to the follow-up questionnaire issued by Plaintiff's counsel, the undersigned notes that procedural perfection is not required in administrative hearings, and a court will not vacate a judgment unless "the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Thus, assuming the ALJ erred in not analyzing Dr. Ryder's responses to the post-hearing questionnaire,[92] Plaintiff must establish that the ALJ's alleged error casts into doubt the existence of substantial evidence to support the ALJ's decision. *See*, *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Courts have explained that in order to show such prejudice, the Plaintiff must point "to evidence that

---

[91] R. Doc. 27, p. 19.

[92] The undersigned notes that the December 18, 2013 questionnaire indicates that Plaintiff's counsel enclosed copies of Dr. Terrell's "psychological consult" as well as "MDMHC 12/1/11 – 3/27/13." AR p. 658. It is therefore questionable whether Dr. Ryder also reviewed subsequent notes from Capitol City Family Health (including his August 12, 2013 and October 14, 2013 notes and Ms. Johnson's contemporaneous progress notes) when completing the questionnaire.

would have been adduced and that could have changed the result." *Brock v. Charter*, 84 F.3d 726, 729 n. 1 (5th Cir. 1996). Here, for the same reasons the ALJ was justified in affording little weight to Dr. Ryder's November 25, 2013 psychiatric evaluation, the undersigned finds that, even assuming the ALJ's failure to explicitly discuss Dr. Ryder's responses to post-hearing interrogatories was in error, such error was harmless.

Finally, to the extent Plaintiff seeks to rely on these medical source opinions (including Dr. Ryder or Dr. Terrell) for a determination of the ultimate issue of whether Plaintiff is able to work, the undersigned notes that "some opinions by physicians are not medical opinions, and as such have no 'special significance' in the ALJ's determination." *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (quoting 20 C.F.R. § 404.1527(e) & (e)(3)). "Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank*, 326 F.3d at 620 (quoting 20 C.F.R. § 404.1527(e)(1)). Accordingly, to the extent Plaintiff asserts that the ALJ failed to accept Dr. Ryder's opinion that Plaintiff "could not sustain a 40 hour work week,"[93] the undersigned finds such determination is not entitled to any special significance.

## VI.    Conclusion

The analysis above demonstrates that Plaintiff's claims of reversible error are without merit. The record considered as a whole supports the finding that the Commissioner applied the proper legal standards and substantial evidence supports the determination that Plaintiff was not disabled.

---

[93] AR p. 661 (Dr. Ryder's statement that "I do clinically state that the patient would not complete tasks in a timely manner and she could not sustain a 40 hour work week."). *See also*, AR p. 479 (Dr. Terrell's statement that Plaintiff "may not be able to sustain effort and persist at a normal pace over the course of a routine 40 hour work week.").

## <u>RECOMMENDATION</u>

It is the recommendation of the magistrate judge that under sentence four of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin, denying the applications for disability insurance benefits and SSI filed by plaintiff Gloria Thomas, be affirmed and this action be dismissed.

Signed in Baton Rouge, Louisiana, on February 24, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**